IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EDMUNDS HOLDING COMPANY, <br> A Delaware Corporation, and <br><br> EDMUNDS.COM, INC., <br> A New York Corporation, <br><br> Plaintiffs, <br><br> v. <br><br> AUTOBYTEL INC., <br> A Delaware Corporation, <br><br> Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  C.A. No. 08-149 (SLR)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS EDMUNDS HOLDING COMPANY AND EDMUNDS.COM INC.'S
ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION UNDER FED. R. CIV. P. 12(b)(1)**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Melanie K. Sharp (No. 2501)
Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801

PROSKAUER ROSE LLP
Steven M. Bauer
Jeremy P. Ozeck
One International Place, 22nd Floor
Boston, MA 02110-2600
(617) 526-9600

P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6681
msharp@ycst.com

*Attorneys for Plaintiffs Edmunds Holding Company and Edmunds.com, Inc.*

Dated:  July 14, 2008

## TABLE OF CONTENTS

I.    NATURE AND STAGE OF THE PROCEEDINGS ....................................................1

II.   SUMMARY OF THE ARGUMENT ...................................................................1

III.  COUNTERSTATEMENT OF FACTS ...............................................................3

      A. EDMUNDS IS A RESPECTED AUTOMOTIVE INDUSTRY
         RESOURCE..................................................................................... 3

      B. AUTOBYTEL HAS ENGAGED IN A SYSTEMATIC POLICY OF
         ENFORCING ITS '517 PATENT AGAINST THE LEADS INDUSTRY. .......... 3

IV.   ARGUMENT ..................................................................................................5

      A. DEFENDANT'S MOTION TO DISMISS SHOULD BE DENIED
         BECAUSE AN ACTUAL CONTROVERSY EXISTS BETWEEN
         EDMUNDS AND AUTOBYTEL WHICH IS RIPE FOR JUDICIAL
         RESOLUTION. ................................................................................ 5

V.    CONCLUSION................................................................................................9

DB02:6978344.1                                                                    067243.1001

## TABLE OF AUTHORITIES

CASES                                                                                                    PAGE(S)

Boston Scientific Corp. v. Johnson & Johnson Inc.,
    532 F. Supp. 2d 648 (D. Del. 2008).................................................................................9

Digital Packaging Licensing, Inc. v. AT&T,
    No. 4:04-CV-548-Y, , 4:05-CV-224-Y, 2006 WL 462442 (N.D. Tex. Feb. 27, 2006).............7

Dr. Reddy's Labs., Ltd. v. aaiPharma Inc.,
    No. 01 Civ. 10102 (LAP), 2002 WL 31059289 (S.D.N.Y. Sept. 13, 2002)..............................7

Echostar Satellite LLC v. Finisar Corp.,
    515 F. Supp. 2d 447 (D. Del. 2007)..............................................................................6, 7

Maryland Casualty Co. v. Pacific Coal & Oil Co.,
    312 U.S. 270 (1941)........................................................................................................6

MedImmune, Inc. v. Genetech, Inc.,
    127 S. Ct. 764 (2007)...............................................................................2, 3, 5, 6, 7, 8, 9

Micron Techn., Inc. v. Mosaid Techns., Inc.,
    518 F.3d 897 (Fed. Cir. 2008)........................................................................................6,8

Monolithic Power Sys., Inc. v. 02 Micro Int'l Ltd.,
    No. C 07-2363 CW, 2007 WL 2318924 (N.D. Cal. Aug. 13, 2007) ........................................7

Sandisk Corp. v. SDMicroelectronics, Inc.,
    480 F.3d 1372 (Fed. Cir. 2007)..................................................................................5, 8, 9

Sigma-Tau Industrie Farmaceutiche Riunite, S.p.A. v. Lonza Ltd.,
    36 F. Supp. 2d 26 (D.D.C. 1999)....................................................................................8

WS Packaging Group v. Global Commerce Group, LLC,
    505 F. Supp. 2d 561 (E.D. Wis. 2007).........................................................................6, 7


STATUTES

35 U.S.C. § 271.........................................................................................................................5

067243.1001

## I.    NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs Edmunds Holding Company and Edmunds.com, Inc. (collectively "Edmunds")
respectfully submit this opposition brief to defendant Autobytel Inc.'s ("Autobytel") Motion to
Dismiss. D.I. 11. This brief is supported by the Declaration of Andrew A. Lundgren, Esquire,
dated July 14, 2008 (hereinafter "Lundgren Decl."), and the exhibits thereto.

On March 13, 2008, Edmunds filed this action against Autobytel seeking a declaratory
judgment of non-infringement and invalidity of U.S. Patent No. 6,282,517 ("the '517 Patent").
D.I. 1. Edmunds and Autobytel are both Delaware corporations. Edmunds' Complaint was filed
after Autobytel sued three of Edmunds' customers, as well as several other companies, for
infringement of the '517 Patent based on activities believed to involve the same or similar
services that Edmunds provides. Id. ¶ 14.

On June 18, 2008, Autobytel filed this motion to dismiss, arguing that this Court did not
have subject matter jurisdiction because "no case or controversy existed." D.I. 11. Autobytel's
argument is that there cannot be an actual case or controversy because Autobytel had not yet
directly contacted Edmunds alleging infringement of the '517 Patent or seeking a royalty from
Edmunds. Autobytel argues that there is no legal adversity between the parties, despite the fact
that it has sued Edmunds' customers -- alleging that they contribute to and/or induce
infringement of others with respect to the '517 Patent; has publicly threatened to continue
enforcing the '517 Patent; and has not represented to Edmunds or the Court that it will not sue
Edmunds for infringement if this case is dismissed.

## II.    SUMMARY OF THE ARGUMENT

In 2007, the Supreme Court articulated the proper standard for declaratory judgment
jurisdiction in a patent case: jurisdiction exists where "there is a substantial controversy, between

parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." <u>MedImmune, Inc. v. Genetech, Inc.</u>, 127 S. Ct. 764, 771 (2007).

Autobytel has placed Edmunds' rights at issue and has created a risk of imminent injury to Edmunds by suing Edmunds' customers, accusing them of contributing to the infringement by others, and has threatened to sue the industry at large. It has refused to agree not to sue Edmunds. Autobytel has placed a target on Edmunds' back, having all but promised to sue Edmunds for infringement, yet seeks a dismissal here presumably so that it can re-file an infringement case in Texas.

Autobytel's allegations that Edmunds' customers directly infringe, contribute to, and/or induce infringement of the '517 Patent, have created a definite and concrete dispute between Edmunds and Autobytel as to whether Edmunds' actions are also infringing or have contributed to or induced Edmunds' customers' to infringe on the '517 Patent. The litigation against Edmunds' customers has placed a cloud over Edmunds' ability to provide uninterrupted services to its customers, not to mention creating the business uncertainty arising from any claim for damages for infringement.

Moreover, Autobytel's express statements that it "is determined to protect and enforce its rights with respect to [the '517 Patent]" and "intend[s] to grow and advance [its] business, in part, through enforcing and strengthening [its] intellectual property rights" have created uncertainty as to Edmunds' legal rights. Lundgren Decl. ¶¶ 3 – 4, Exs. 1 & 2 (Business Wire Article, dated Dec. 11, 2004; Autobytel 2007 Form 10-K).

Autobytel ignores these facts. Instead, Autobytel improperly focuses on one fact in its motion to dismiss: that it did not *expressly* threaten Edmunds with a lawsuit or make representations concerning Edmunds' infringement of the '517 Patent before this lawsuit was

067243.1001

brought. MedImmune, however, requires a court to consider "all the circumstances" surrounding a dispute to determine whether a justiciable controversy exists. Indeed, consideration of all of the circumstances, including Autobytel's systematic and explicit policy of enforcing the '517 Patent against Edmunds' customers and competitors, demonstrates that judicial review is warranted.

Accordingly, Defendant's motion to dismiss should be denied.

## III.    COUNTERSTATEMENT OF FACTS

### A.    EDMUNDS IS A RESPECTED AUTOMOTIVE INDUSTRY RESOURCE.

Edmunds was founded in 1966 for the purpose of publishing new and used automotive pricing guides to assist automobile buyers. In 1995, Edmunds launched www.edmunds.com, which was the first automotive information Web site, and predated the advent of automobile manufacturer Web sites and all other online automotive destinations. Over the years, Edmunds has received many accolades, including being named "Best of the Web" by Forbes, "Best Site" for shopping for a new or used car by The Wall Street Journal, and "Most Useful Website" by J.D. Power and Associates for four years running.

Currently, millions of consumers visit Edmunds.com each month to research their next vehicle. Once consumers have completed their research and are ready to purchase a vehicle, Edmunds.com allows consumers to input the make and model they are interested in buying along with their zip code. Edmunds then provides these sales "leads" to its business partners.

### B.    AUTOBYTEL HAS ENGAGED IN A SYSTEMATIC POLICY OF ENFORCING ITS '517 PATENT AGAINST THE LEADS INDUSTRY.

Over the past few years, Autobytel has engaged in a systematic policy of enforcing the '517 Patent against companies that communicate potential customers' interests to sellers or dealers, commonly referred to as providing sales leads. In particular, Autobytel has alleged

infringement of the '517 Patent based on the activities of Edmunds' customers, including Dealix Corp., Internet Brands, Inc., and Auto Internet Marketing, Inc. who are engaged in obtaining and distributing sales leads from consumers, and have purchased sales leads from Edmunds.

On May 2, 2003, Autobytel filed its first suit in the U.S. District Court for the Central District of California against three companies, NCR Corporation, Sagetree, Inc., and Baseline Consulting Group, Inc., alleging infringement of the '517 Patent.   See D.I. 1 (Edmunds' Complaint) ¶ 11.  After settling this action, Autobytel filed a second lawsuit in the U.S. District for the Eastern District of Texas, asserting the '517 Patent against Dealix Corporation ("Dealix").  Id. ¶ 12.  Dealix is both a competitor to Edmunds (since it too solicits automobile sales leads though a Web site) and a customer of Edmunds (since it also purchases automobile sales leads from Edmunds for resale).  After settling with Dealix, Autobytel filed a third lawsuit, again in the Eastern District of Texas, against Edmunds' customer and competitor, Internet Brands, Inc. ("Internet Brands"), against Edmunds' customer, Auto Internet Marketing, Inc. ("AIM"), against Edmunds' customer InsWeb Corp. ("InsWeb"), and against LeadPoint Inc.  Id. ¶ 12-13.

Autobytel has publicly stated that it "is determined to protect and enforce its rights with respect to its intellectual property" and the '517 patent in particular.  Lundgren Decl. ¶ 3, Ex. 1 (Business Wire Article, dated Dec. 11, 2004 (quoting Autobytel Inc.'s then President and CEO Jeffrey Schwartz)).  In addition, Autobytel's 2007 Form 10-K filed with the SEC discusses its '517 Patent litigation and affirms the fact that Autobytel "intend[s] to grow and advance [its] business, in part, through enforcing and strengthening [its] intellectual property rights."  Id. ¶ 4, Ex. 2 (Autobytel 2007 10-K).  These statements constitute Autobytel's expressed intention to continue to sue any competitor that it believes may infringe upon the '517 Patent.

Autobytel's serial litigation of the '517 Patent has created an imminent risk of injury to Edmunds. The lawsuits against *Edmunds' customers* have created an actual controversy over whether Edmunds' business of supplying sales leads has "infringed one or more claims of the '517 patent in violation of 35 U.S.C. § 271 by, without authority, (1) making, using, offering to sell and selling systems and/or methods that embody the invention claimed in the '517 patent; and/or (2) *actively inducing and/or contributing to others' infringement of the invention claimed in the '517 patent.*" Lundgren Decl. ¶¶ 5 – 6, Exs. 3 & 4 (Complaint in Autobytel Inc. v. Dealix Corp., Civil No. 2:2004-cv-00338; Complaint in Autobytel Inc. v. InsWeb Corp., et al., Civil No. 2:2007-cv-00524) (emphasis added). Moreover, the litigation against Edmunds' customers has raised doubts as to Edmunds' ability to continue providing sales leads to its customers, as well as uncertainty as to the amount of the damages that would result if Edmunds' actions (or that of its customers) were ultimately deemed to be infringing.

The fact that, in the face of this lawsuit, Autobytel does not even attempt to offer a release or any clear statement that it does not intend to sue Edmunds demonstrates that a substantial controversy exists between Edmunds and Autobytel. The law does not require Edmunds to sit back and wait for Autobytel to sue on its own schedule.

## IV.   ARGUMENT

### C.   DEFENDANT'S MOTION TO DISMISS SHOULD BE DENIED BECAUSE AN ACTUAL CONTROVERSY EXISTS BETWEEN EDMUNDS AND AUTOBYTEL WHICH IS RIPE FOR JUDICIAL RESOLUTION.

In MedImmune, Inc. v. Genetech, Inc., 127 S. Ct. 764, 771-77 (2007), the Supreme Court rejected the "reasonable apprehension of suit" test, and explicitly endorsed a broader, more liberalized standard for determining when a court has jurisdiction to hear declaratory judgment suits. Sandisk Corp. v. SDMicroelectronics, Inc., 480 F.3d 1372, 1380 (Fed. Cir. 2007). In particular, the Supreme Court stated that the inquiry should focus on whether, looking at "all the

circumstances ... there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, 127 S. Ct. at 771 (quoting Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941)). In so holding, the Supreme Court stressed the fact that there are no bright-line rules, and there is no "precise test for determining in every case whether there is [] a [justiciable] controversy." Maryland Casualty, 312 U.S. at 273.

Since MedImmune, courts have interpreted this standard broadly to permit declaratory judgment jurisdiction even in cases where a defendant has unequivocally promised not to sue the declaratory judgment plaintiff. See, e.g., Sandisk, 480 F.3d at 1381. So long as the totality of circumstances demonstrates that the defendant has engaged in a "course of conduct that shows a preparedness and willingness to enforce its patent rights," a promise or covenant not to sue cannot eliminate the existence of a justiciable controversy. Id.; see also, Echostar Satellite LLC v. Finisar Corp., 515 F. Supp. 2d 447, 451-52 (D. Del. 2007) ("a statement by a patent holder promising not to sue the plaintiff does not eliminate the justiciable controversy created by the patent holder's actions"); WS Packaging Group v. Global Commerce Group, LLC, 505 F. Supp. 2d 561, 567 (E.D. Wis. 2007) (denying defendant's motion to dismiss despite the execution of a covenant not to sue, because defendant's pattern of enforcement and threats created a threat of injury to the plaintiff of sufficient immediacy to warrant issuance of a declaratory judgment).

Post-MedImmune, there is no shortage of courts holding that declaratory judgment jurisdiction exists where a defendant has engaged in a pattern of suing competitors and making public statements affirming an intent to aggressively enforce its patent(s). See, e.g., Micron Techn., Inc. v. Mosaid Techns., Inc., 518 F.3d 897, 901-02 (Fed. Cir. 2008) (reversing dismissal of a declaratory judgment action based, in part, on the fact that defendant's press releases, Form

- 6 -

10-K, and pattern of litigation demonstrated an actual controversy which should be heard);
Echostar, 515 F. Supp. 2d at 451-52 (finding declaratory judgment jurisdiction based on
defendant's recent, successful infringement suit on the same patent and its issuance of a press
release indicating that they were prepared to continue enforcing their patent rights through
licensing); WS Packaging, 505 F. Supp. 2d at 567 (holding that, _inter alia_, defendant's
"bragg[ing] in a trade magazine of its habit of threatening to sue (or actually suing) the
customers of allegedly infringing vendors or manufacturers" was sufficient to warrant a
declaratory judgment); see also Monolithic Power Sys., Inc. v. 02 Micro Int'l Ltd., No. C 07-
2363 CW, 2007 WL 2318924, at *1-*3 (N.D. Cal. Aug. 13, 2007) (denying defendant's motion
to dismiss irrespective of the fact that defendant had not accused the plaintiff's products of
infringing because, _inter alia_, defendant "has asserted the [patent at issue] against four other
companies at least some of whom are [plaintiff's] customers").

     While MedImmune makes clear that a patentee's threats or lawsuits against a plaintiff's
customers are sufficient to create a justiciable controversy -- even when no explicit allegations of
infringement have been directed at the declaratory judgment plaintiff -- courts around the
country followed this rule _even before_ MedImmune's more lenient standard for jurisdiction was
adopted:

- Digital Packaging Licensing, Inc. v. AT&T, No. 4:04-CV-548-Y, 4:05-CV-224-Y, 2006 WL 462442, at *4 (N.D. Tex. Feb. 27, 2006) (finding declaratory judgment jurisdiction despite specific statements that there were no plans to sue the plaintiff because defendant's suit against plaintiff's customers indicated an intent to enforce defendant's patents, and created "an objectively reasonable apprehension on [the part of the plaintiff] that it was next to be sued");
- Dr. Reddy's Labs., Ltd. v. aaiPharma Inc., No. 01 Civ. 10102 (LAP), 2002 WL 31059289, at *6-*8 (S.D.N.Y. Sept. 13, 2002) ("threats of infringement suits against an entire product industry can create reasonable apprehension among all individual members of that industry");

- <u>Sigma-Tau Industrie Farmaceutiche Riunite, S.p.A. v. Lonza Ltd.</u>, 36 F. Supp. 2d 26, 30 n.5 (D.D.C. 1999) ("The threat of infringement does not have to be directed against plaintiffs specifically. It is sufficient to create a reasonable apprehension if plaintiffs' customers, or other competitors, are threatened.");

In short, "Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do." <u>Sandisk Corp. v. STMicroelectronics, Inc.</u>, 480 F.3d 1372, 1381 (Fed. Cir. 2007).

Under the standard set forth in <u>MedImmune</u>, there is no question that "the facts alleged [by Edmunds], under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." 127 S. Ct. at 771.

As to standing, the record indicates that Edmunds faces an actual or imminent injury due to Autobytel's lawsuits against Edmunds' customers. Again, Autobytel's allegations that *Edmunds' customers* have contributed to and/or induced infringement *of others* with respect to the '517 Patent imply that a charge of direct or contributory infringement may be brought against Edmunds for its part in supplying sales leads to these customers.

As to ripeness, there can be no question that this dispute is of "sufficient immediacy and reality" to warrant a declaratory judgment. Autobytel's policy of bringing suit against Edmunds' customers, and its public statements targeting the industry, are just the type of "scare-the-customer-and-run tactics" that the Declaratory Judgment Act was designed to eliminate. <u>Sandisk Corp. v. STMicroelectronics, Inc.</u>, 480 F.3d 1372, 1383 (Fed. Cir. 2007). Indeed, "[t]he purpose of the Declaratory Judgment Act ... in patent cases is to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights." <u>Micron Tech.</u>, 518 F.3d at 902.

- 8 -

The Federal Circuit has stated that a defendant's "statement that it does not intend to sue does not moot the actual controversy created by [the defendant's] acts." <u>Sandisk</u>, 480 F.3d at 1383. The law does not require Edmunds to choose between the incurring growing potential liability for patent infringement and abandoning its enterprises.  <u>See, e.g.</u>, <u>Boston Scientific Corp. v. Johnson & Johnson Inc.</u>, 532 F. Supp. 2d 648, 651-53 (D. Del. 2008) (finding declaratory judgment jurisdiction despite the fact that plaintiff's product had not even obtained FDA approval).  Indeed, Article III does <u>not</u> require "that the plaintiff bet the farm, so to speak, by taking [or continuing to engage in] the violative action" before being able to seek a judicial declaration of its rights.  <u>MedImmune, Inc. v. Genetech, Inc.</u>, 127 S. Ct. 764, 772 (2007); <u>Sandisk</u>, 480 F.3d at 1378-81.

Accordingly, on the record before the Court, the facts demonstrate that a justiciable Article III controversy exists.

## V.    <u>CONCLUSION</u>

For the aforementioned reasons, Defendant's Motion to Dismiss (D.I. 11) should be denied.

DB02:6978344.1

067243.1001

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_(signature)_

Melanie K. Sharp (No. 2501)
Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801

P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6681
msharp@ycst.com


Steven M. Bauer
Jeremy P. Oczek
PROSKAUER ROSE LLP
One International Place, 22nd Floor
Boston, MA 02110-2600
(617) 526-9000

*Attorneys for Plaintiffs Edmunds Holding Company and Edmunds.com, Inc.*

Dated:  July 14, 2008

- 10 -

## CERTIFICATE OF SERVICE

I, Andrew A. Lundgren, Esquire, hereby certify that on July 14, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Thomas C. Grimm, Esquire
> James W. Parrett, Jr., Esquire
> Morris Nichols Arsht & Tunnell LLP
> 1201 North Market Street
> PO Box 1347
> Wilmington, DE 19899-1347

I further certify that on July 14, 2008, I caused a true and correct copy of the foregoing document to be served by e-mail and hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

### BY E-MAIL

> Timothy J. Haller, Esquire (haller@nshn.com)
> Gregory P. Casimer, Esquire (casimer@nshn.com)
> Niro, Scavone, Haller & Niro, Ltd.
> 181 West Madison Street, Suite 4600
> Chicago, IL  60602-4515

> YOUNG CONAWAY STARGATT
> & TAYLOR, LLP
>
> Melanie K. Sharp (No. 2501)
> msharp@ycst.com
> Andrew A. Lundgren(No. 4429)
> alundgren@ycst.com
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, Delaware  19899
> (302) 571-6600