IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EDMUNDS HOLDING COMPANY, <br> A Delaware Corporation, and <br><br> EDMUNDS.COM, INC., <br> A New York Corporation, <br><br> Plaintiffs, <br><br> v. <br><br> AUTOBYTEL INC., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) C.A. No. 08-149 (SLR) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS FOR LACK OF
<u>SUBJECT MATTER JURISDICTION UNDER FED. R. CIV. P 12(b)(1)</u>**

Defendant Autobytel, Inc. ("Autobytel") respectfully submits this reply brief in support of its motion to dismiss the present action for lack of subject matter jurisdiction (Def.'s Mot. To Dismiss, D.I. 11).

Plaintiffs Edmunds Holding Company and Edmunds.com, Inc. (collectively, "Edmunds") have failed their "burden of proving the existence of an actual controversy by a preponderance of the evidence with regard to their declaratory judgment complaint." *Samsung Elecs., Co. v. On Semiconductor Corp.*, 541 F. Supp. 2d 645, 648 (D. Del. 2008).

<u>ARGUMENT</u>

Plaintiffs agree that Autobytel has never made any representations to Edmunds regarding enforcement of U.S. Patent No. 6,282,517 ("the '517 patent"). Plaintiffs agree that Autobytel has neither sent a letter to, nor engaged in any communication with, Edmunds regarding licensing or infringement of the '517 patent. Despite this agreement, Edmunds

1

maintains that there exists "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764, 771 (2007).

In support of this position, Edmunds relies on the fact that in 2004 and 2007, Autobytel filed suit against some of Edmunds' customers. Additionally, Edmunds points to a 2004 statement made by Autobytel which indicates a willingness to enforce intellectual property rights.[1] Edmunds maintains that even in the absence of any contact between Autobytel and Edmunds, or any accusations by Autobytel that Edmunds is infringing or potentially infringing its patents, these facts serve to create an actual controversy sufficient to establish subject matter jurisdiction pursuant to the Declaratory Judgment Act.

In its answering brief, Plaintiffs refer to the parties against whom Autobytel has enforced the '517 patent as "business partners," "competitors" and "customers." In doing so, Edmunds demonstrates the complexity of the leads market, and why the rhetoric Plaintiffs employ is inapposite and inappropriate. Edmunds offers no evidence or explanation why Autobytel would know who is or is not a customer of Edmunds' auto leads service. There is nothing unique about the relationship between Edmunds and the parties against whom Autobytel has asserted its intellectual property rights that would support the notion that "Autobytel has placed a target on Edmunds' back" and the assertion that Autobytel has "all but promised to sue Edmunds for infringement" is pure hyperbole. (Pl.'s Answering Br., D.I. 14.) In fact, Autobytel

---

[1] Edmunds attempts to rely on Autobytel's 2007 Form 10-K to support subject matter jurisdiction in the present case, however, as can be seen from Andrew A. Lundgren, Esq.'s declaration, that document was not filed until March 17, 2008 – five days after Edmunds filed the present action. Consequently, it cannot be used to establish subject matter jurisdiction. *Walton v. United States*, 80 Fed. Cl. 251, 264 (Fed. Cl. 2008) ("[T]he Federal Circuit has applied the rule that jurisdiction depends on the facts as they exist at the time the complaint is filed in situations where jurisdiction was created by statute.")

has made no affirmative acts at all vis-à-vis its intellectual property and Edmunds. Edmunds points to no allegation, pleading or motion filed by Autobytel in any '517 litigation that suggests Edmunds was the secret target marked by Autobytel for later action. There is no explanation beyond paranoia that can be discerned from Edmunds' brief.

### A. Plaintiffs Have Failed to Show any Precedent in Support of Finding an Actual Controversy in the Absence of Prior Assertions of Infringement

Edmunds correctly cites the standard set forth by the Supreme Court in *MedImmune*, that the inquiry should focus on "all the circumstances." *MedImmune*, 127 S. Ct. at 771. However, Edmunds then ignores the key circumstance - the fact that Autobytel has made no assertions that Edmunds infringes, or was in need of a license under, the '517 Patent. In fact, in nearly every case cited by Edmunds in support of subject matter jurisdiction there was direct contact between the defendant and plaintiff. *See, e.g., EchoStar Satellite LLC v. Finisar Corp.*, 515 F. Supp. 2d 447, 449 (D. Del. 2007) ("On June 25, 2004, Defendant's counsel sent a letter informing Plaintiffs that Defendant believed Plaintiffs had been utilizing various aspects of [the patent at issue] for a substantial length of time"); *WS Packaging Group, Inc. v. Global Commerce Group, LLC*, 505 F. Supp. 2d 561 (E.D. Wis. 2007) (from statement of facts in a previous decision in that case *WS Packaging Group, Inc. v. Global Commerce Group, LLC*, 2006 U.S. Dist. LEXIS 64166, at *3 (E.D. Wis. Sept. 5, 2006): "During the term of the licensing agreement, WS claims that Global principal Donnie Causey … repeatedly stated that WS's hidden message products were covered by the '062 patent and that, if WS failed to renew the licensing agreement, Global would sue WS and its customers for patent infringement."); *Micron Tech., Inc. v. MOSAID Techs., Inc.*, 518 F.3d 897, 898 (Fed Cir. 2008) ("On June 6, 2001, MOSAID sent a warning letter strongly suggesting that Micron should license its technology. MOSAID sent follow-up letters on December 19, 2001; March 18, 2002; and July 19, 2002.");

*Monolithic Power Sys., Inc. v. 02 Micro Int'l Ltd.*, No. C 07-2363 CW, 2007 U.S. Dist LEXIS 61961, at *9 (N.D. Cal. Aug. 13, 2007) ("02 Micro has sued numerous parties, including MPS, accusing them of infringing [the patent at issue]."); *Digital Packaging Licensing, Inc. v. AT&T*, No. 4:04-CV-548-Y, 2006 U.S. Dist. LEXIS 9518, at *3 (N.D. Tex. Feb. 27, 2006) ("On January 26, 2005, DPL sent a letter ("the 2005 letter") to consolidated plaintiff Nortel Networks, Inc. ("Nortel") informing Nortel of its ownership of the [patents at issue] and of its claims in the infringement suit."); *Sigma-Tau Industrie Farmaceutiche Riunite, S.P.A. v. Lonza, Ltd.*, 36 F. Supp. 2d 26, 30 (D.D.C. 1999) (in addition to letters to plaintiff's customers, defendant "sent [plaintiff] Biosint a letter stating that if Biosint continued to sell LCLT 'in Europe for application in tablets, capsules or powder mixes,' Lonza would 'defend [its] patent with all legal means and file patent infringement claims against [Biosint] with the relevant courts.'").

The only exception to this trend is in *Reddy's Laboratories v. AaiPharma Inc.*, 66 U.S.P.Q.2D (BNA) 1878 (S.D.N.Y. Sept. 13, 2002). However, in that case the threat of litigation was explicitly directed toward any drug company that tried to manufacture generic Prilosec. *Id*. at *8-12, *20-24. Additionally, the two parties in that case had a history of litigation regarding generic drug manufacturing (the potentially infringing activity). *Id*. at *8-13. In the present case, Edmunds points to vague assertions by Autobytel that it intends to enforce its intellectual property.

    B. Plaintiffs Have Failed to Demonstrate the Requisite Immediacy

In support of its contention that the present controversy is of "sufficient immediacy and reality" Edmunds again invokes the litigation between Autobytel and other members of the auto leads industry. However, Edmunds' reliance on these previous actions, specifically the 2004 action between Autobytel and Dealix, belies Edmunds' claim that this

4

dispute warrants declaratory judgment. Post-*MedImmune*, the courts have yet to analyze how delay on the part of a plaintiff in bringing a declaratory judgment action affects the immediacy analysis. However, in *Citizen Elecs. Co. v. Osram GmbH*, 377 F. Supp. 2d 149, 152 (D.D.C. 2005) the District Court for the District of Columbia opined on that very issue, not only in light of the "reasonable apprehension of imminent suit" test rejected by the Supreme Court, but also with respect to the immediacy requirement set forth in *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941) which the Supreme court relied upon in *MedImmune*, 127 S. Ct. at 771. Consequently, the analysis is still instructive to the present case. In *Citizens Elecs. Co.*, the court held that:

> **[A] plaintiff's failure to take prompt action in the face of what it claims to be a real threat of an infringement suit is certainly a highly-relevant factor** in assessing the reasonableness of plaintiff's apprehension at the time that suit is filed. Moreover, the fact that defendant did nothing to enforce its rights against the plaintiff after the letters in 2003 and after its press release in July 2004 should have, if anything, reduced plaintiff's fear of suit by January 2005.
>
> Moreover, plaintiff is incorrect as a matter of law in its attempt to read out the requirement of immediacy. Although it is true that OSRAM need not be "poised on the courthouse steps" (Pl.'s Opp'n at 17 (quoting *Vanguard Research, Inc. v. PEAT, Inc.*, 304 F.3d 1249 at 1255 (2002))), a district court cannot render a declaratory judgment in the absence of an "actual controversy," which means that the parties must have "adverse legal interests, of sufficient *immediacy* and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co.*, 312 U.S. at 273 (emphasis added).

*Citizens Elecs. Co.* at 157 (emphasis added). In the present case, Edmunds waited for over four years from the first act it claims created an immediate controversy, and four months after the most recent act it claims created an immediate controversy. Such a delay clearly shows that Edmunds did not believe that Autobytel's actions in asserting its rights against third parties created an immediate controversy.

5

Furthermore, Edmunds has not indicated that it has been directly involved in any of the previous litigation. Edmunds claims that these lawsuits "raised doubts as to Edmunds' ability to continue providing sales leads to its customers, as well as uncertainty as to the amount of the damages that would result if Edmunds' actions (or that of its customers) were ultimately found to be infringing." (Pl.'s Answering Br., D.I. 14.) Despite this claim, Edmunds has apparently never made any effort to involve itself in these cases which it claims created an imminent risk of injury. Not once has Edmunds been required to be joined to any of the '517 suits pursuant to Fed. R. Civ. P. 19, nor has it sought to join any of the '517 suits pursuant to Fed. R. Civ. P. 20, nor has Edmunds sought to intervene in any of the '517 suits pursuant to Fed. R. Civ. P. 24 to protect its interest.[2] Furthermore, Edmunds makes no claims that it has ever been issued a subpoena nor that its name has ever been raised in any pleading, motion or order in any of the '517 suits. At no point in the past five years that Autobytel has been enforcing the '517 patent has Edmunds been directly involved in any of the litigation in which it claims to have had such a considerable and immediate interest.

      C.    <u>Defendant Has No Obligation to Covenant Not to Sue</u>

Edmunds also makes the unsupported claim that "the fact that, in the face of this lawsuit, Autobytel does not even attempt to offer a release or any clear statement that it does not intend to sue Edmunds demonstrates that a substantial controversy exists between Edmunds and Autobytel." (Pl.'s Answering Br., D.I. 14.) This statement is fundamentally flawed in at least two ways. First, it attempts to show subject matter jurisdiction based on a lack of action on

---

[2] In fact, Edmunds still has an opportunity to intervene in the case currently before the Eastern District of Texas – *Autobytel, Inc. v. InsWeb Corp., et al.*, Civil No. 2:2007-cv-00524, as the scheduling conference in that matter is not to be held until July 29, 2008. Consequently, no party would be prejudiced by such an intervention. As an alternative to dismissing this case for lack of subject matter jurisdiction, the Court could stay the present proceedings until Edmunds has had an opportunity to file the appropriate motion and appear at the July 29th scheduling conference.

Autobytel's part since the inception of this suit.  On the contrary, Edmunds must show that jurisdiction was proper at the time of filing the present suit.  *Walton*, 80 Fed. Cl. at 264.  Second, it attempts to create a rule wherein any declaratory judgment defendant who refused to capitulate to the demands of the plaintiff would be conceding the existence of a substantial controversy.  Rather, Edmunds has manufactured the present controversy from whole cloth by filing the present suit.  Prior to this action, no controversy existed, a fact which is obvious in light of the undisputed fact that prior to the present suit Autobytel had never made any representation regarding whether or not Edmunds potentially infringed the '517 Patent.

        D.      <u>Plaintiffs Have Failed to Show Standing</u>

To support its claim of standing, Edmunds again invokes Autobytel's infringement suits against third parties.  Specifically, Edmunds claims that "Autobytel's allegations that *Edmunds' customers* have contributed to and/or induced infringement *of others* with respect to the '517 Patent imply that a charge of direct or contributory infringement may be brought against Edmunds for its part in supplying sales leads to these customers."  (Pl.'s Answering Br., D.I. 14.)  In so stating, Edmunds ignores the fact that customers can not contribute to the infringement of their suppliers.  *Preemption Devices, Inc. v. Minnesota Mining & Mfg. Co.*, 803 F.2d 1170, 1174 (Fed. Cir. 1986) ("Whoever **sells** a component of a patented ... combination ... constituting a material part of the invention…") (emphasis added).  Additionally, the allegation that Edmunds' customers have contributed to or induced infringement of others has no bearing on whether Edmunds would itself be liable for contributory infringement, since "indirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement."  *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004).  Thus, Edmunds' argument that standing in the present

case is justified by Autobytels' allegations that third parties have contributed to or induced infringement of others is unfounded.

## CONCLUSION

Edmunds has failed its "burden of proving the existence of an actual controversy by a preponderance of the evidence with regard to their declaratory judgment complaint." *Samsung Electronics*, 541 F. Supp. 2d at 648. Edmunds has not addressed the fact that the controversy conjured up to support its request for declaratory judgment is purely hypothetical, with no basis in reality, as required by the Declaratory Judgment Act and Article III of the United States Constitution.

For the forgoing reasons, this Court should grant Defendant Autobytel's Motion to Dismiss for Lack of Subject Matter Jurisdiction.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ James W. Parrett, Jr.*
_____
Thomas C. Grimm (#1098)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
tgrimm@mnat.com
jparrett@mnat.com
*Attorneys for Defendant*

OF COUNSEL:

Timothy J. Haller
Gregory P. Casimer
NIRO, SCAVONE, HALLER & NIRO
181 West Madison Street, Suite 4600
Chicago, IL 60602-4515
(312) 236-0733

July 24, 2008
2424443

**CERTIFICATE OF SERVICE**

I hereby certify that on July 24, 2008, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all registered participants.

I also certify that on July 24, 2008, I caused to be served true and correct copies of the foregoing document on the following in the manner indicated below:

**BY HAND & E-MAIL**

Melanie K. Sharp
YOUNG CONAWAY STARGATT & TAYLOR LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391

**BY E-MAIL**

Steven M. Bauer
Jeremy P. Oczek
PROSKAUER ROSE LLP
One International Place, 14th Floor
Boston, MA  02110-2600

*/s/ James W. Parrett, Jr.*

James W. Parrett, Jr. (#4292)
jparrett@mnat.com

2424443