IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

EDMUNDS HOLDING COMPANY,         )
A Delaware Corporation, and      )
                                 )
EDMUNDS.COM, INC.,               )
A New York Corporation,          )
                                 )   Civ. No. 08-149-SLR
            Plaintiffs,          )
                                 )
      v.                         )
                                 )
AUTOBYTEL INC.,                  )
                                 )
            Defendant.           )

---

Melanie K. Sharp, Esquire, and Andrew A. Lundgren, Esquire, of Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware, and Steven M. Bauer, Esquire, and Jeremy P. Ozeck, Esquire, of Proskauer Rose LLP, Boston, Massachusetts.  Counsel for Plaintiffs.

Thomas C. Grimm, Esquire, and James W. Parrett, Jr., Esquire, of Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware.  Counsel for Defendant.  Of Counsel: Timothy J. Haller, Esquire, and Gregory P. Casimer, Esquire, of Niro, Scavone, Haller, & Niro, Chicago, Illinois.

---

**MEMORANDUM OPINION**

Dated:  February 20, 2009
Wilmington, Delaware

**ROBINSON, District Judge**

## I. INTRODUCTION

Plaintiffs Edmunds Holding Company and Edmunds.com, Inc. (collectively, "Edmunds") brought this action against defendant Autobytel Inc. ("Autobytel") on March 13, 2008, seeking declaratory judgment of non-infringement and invalidity of U.S. Patent No. 6,282,517 ("the 517 patent"). (D.I. 1)  On June 18, 2008, Autobytel moved to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that the court lacks subject matter jurisdiction over the action. (D.I. 11)  More specifically, Autobytel argues that the Declaratory Judgment Act, 28 U.S.C. § 2201(a), does not confer subject matter jurisdiction on the court because, as of the date the action commenced, there was no "case of actual controversy" between Edmunds and Autobytel regarding the '517 patent. (D.I. 12)  The motion has been fully briefed. (D.I. 12, 14, 16)  For the reasons that follow, the court grants the motion.

## II. BACKGROUND

Edmunds, as part of its business, receives information from potential automobile buyers and distributes that information, called sales leads, to automobile dealers and other companies that distribute sales leads. (D.I. 1 at ¶¶ 14-15)  Autobytel, owner of the '517 patent,[1] has, in recent years, sued several companies in the sales leads business for infringement of the '517 patent. (*Id.* at ¶¶ 9-14)  In May 2003, Autobytel sued NCR Corporation, Sagetree, Inc., and Baseline Consulting Group, Inc., in the

---

[1]The '517 patent is entitled "Real Time Communication of Purchase Requests." (D.I. 1 at ex. A)

United States District Court for the Central District of California.[2] (*Id.* at ¶ 11) Sixteen

months later, in September 2004, Autobytel sued Dealix Corporation in the United

States District Court for the Eastern District of Texas.[3] (*Id.* at ¶ 12)[4] Most recently, in

November 2007, Autobytel sued InsWeb Corp., LeadPoint, Inc., Internet Brands, Inc.,

and Auto Internet Marketing, Inc., in the United States District Court for the Eastern

District of Texas.[5] (D.I. 1 at ¶ 13)[6]

Dealix Corporation, Internet Brands, Inc., and Auto Internet Marketing, Inc., are

past and current purchasers of sales leads from Edmunds. (*Id.* at ¶ 14) In its lawsuits

against these sales lead companies, Autobytel has accused each of infringing the '517

patent by, *inter alia*, "actively inducing and/or contributing to others' infringement of the

invention claimed in the '517 patent." (D.I. 15 at ex. 3 & 4)

## III. STANDARD OF REVIEW

"Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a complaint for

---

[2]The case is captioned *Autobytel Inc. v. NCR Corp., et al.*, Civ. No.
8:2003cv00432. (D.I. 1 at ¶ 11)

[3]The case is captioned *Autobytel Inc. v. Dealix Corp.*, Civ. No. 2:2004cv00338.
(D.I. 1 at ¶ 12)

[4]Shortly after filing its suit against Dealix Corporation, Autobytel's then-President
and CEO Jeffrey Schwartz is quoted as saying, in a December 11, 2004 Business Wire
article, "Autobytel views its intellectual property as a significant asset and is determined
to protect and enforce its rights with respect to its intellectual property." (D.I. 15 at ex.
1)

[5]The case is captioned *Autobytel Inc. v. InsWeb Corp, et al.*, Civ. No.
2:2007cv00524. (D.I. 1 at ¶ 13)

[6]Autobytel dismissed the first two suits with prejudice in October 2003 and March
2007, respectively; the most recent suit is currently pending. (D.I. 1 at ¶¶ 11-13)

lack of jurisdiction over the subject matter, or if the plaintiff lacks standing to bring his claim." *Samsung Elecs. Co., Ltd. v. ON Semiconductor Corp.*, 541 F. Supp. 2d 645, 648 (D. Del. 2008). Rule 12(b)(1) motions may present either a facial or factual challenge to the court's subject matter jurisdiction. *Id.* Where the movant presents a facial challenge, the court must accept all factual allegations in the complaint as true and may only consider the complaint and documents referenced therein or attached thereto. *Id.* (citing *Gould Elecs., Inc., v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)). Where the movant presents a factual challenge, the court need not confine its consideration to the allegations of the complaint nor accept those allegations as true. *Mortensen v. First Fed. Sav. & Loan*, 549 F.2d 884, 891 (3d Cir. 1977). Rather, the court may consider evidence outside the pleadings, including affidavits, depositions, and testimony, "to resolve any factual issues bearing on jurisdiction." *Samsung*, 541 F. Supp. 2d at 648 (citing *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997)). "[P]laintiff bears the burden of proving that jurisdiction exists." *Id.*

## IV. DISCUSSION

"The Declaratory Judgment Act requires an actual controversy between the parties before a federal court may exercise jurisdiction." *Id.* (internal quotation marks omitted). A plaintiff bringing an action for declaratory judgment must prove, by a preponderance of the evidence, that an actual controversy exists. *See id.* (citing *Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 887 (Fed. Cir. 1992)). An actual controversy exists where "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient

3

immediacy and reality to warrant the issuance of a declaratory judgment.'"[7]

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).  This is not a bright-line test. *See, e.g., Maryland Casualty*, 312 U.S. at 273; *Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1283 (Fed. Cir. 2007).

Bearing the burden of proof here, Edmunds argues that the "actual controversy" standard is broad and permissive, stating that courts find actual controversies even where the patentee had promised to not sue the declaratory judgment plaintiff, and even where the patentee had not specifically targeted the declaratory judgment plaintiff, so long as the patentee had otherwise manifest an intent (*e.g.*, through general enforcement threats or lawsuits against other alleged infringers) to enforce its patent rights. (D.I. 14 at 6-8) (citing *SanDisk Corp. v. SDMicroelectronics, Inc.*, 480 F.3d 1372, 1381; *Echostar Satellite LLC v. Finisar Corp.*, 515 F. Supp. 2d 447, 451-52 (D. Del. 2007); *WS Packaging Group v. Global Commerce Group, LLC*, 505 F. Supp. 2d 561, 567 (E.D. Wis. 2007); *Micron*, 518 F.3d at 901-02; *Monolithic Power Sys., Inc. v. 02 Micro Int'l Ltd.*, No. C 07-2363 CW, 2007 WL 2318924, at *1-3 (N.D. Cal. Aug. 13, 2007); *Digital Packaging Licensing, Inc. v. AT&T*, No. 4:04-CV-548-Y, 4:05-CV-224-Y,

---

[7]"[T]he phrase 'case of actual controversy' in the [Declaratory Judgment] Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune*, 549 U.S. at 127 (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937)).  Consequently, the analysis of whether "a case of actual controversy" exists is essentially an analysis of whether Article III standing exists. *See generally id.; see also, e.g., Sandisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007); *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 901 (Fed. Cir. 2008).  For brevity's sake, the court confines its analysis in this opinion to whether, under the Declaratory Judgment Act, "a case of actual controversy" exists.

2006 WL 462442, at *4 (N.D. Tex. Feb. 27, 2006); *Dr. Reddy's Labs., Ltd. v. aaiPharma Inc.*, No. 01 Civ. 10102 (LAP), 2002 WL 31059289, at *6-8 (S.D.N.Y. Sep. 13, 2002); *Sigma-Tau Industrie Farmaceutiche Riunite, S.p.A v. Lonza Ltd.*, 36 F. Supp. 2d 26, 30 n.5 (D.D.C. 1999)) Framing the "actual controversy" standard thus, Edmunds argues that Autobytel's public statements[8] and pattern of litigation against sales leads companies, including Edmunds customers, manifests its intent to enforce its rights against Edmunds and thus constitute facts sufficient to show the existence of an actual controversy between the parties. (D.I. 14 at 5-8)

The cases Edmunds cites in support, however, do not show the "actual controversy" standard to be as broad or permissive as Edmunds suggests. Specifically, as Autobytel points out (D.I. 16 at 3-4), the patentee in each of the cases Edmunds cites had in some way, prior to suit being filed, acted overtly and specifically toward the declaratory judgment plaintiff (or, at the very least, a class of alleged infringers to which plaintiff belonged) regarding the declaratory judgment plaintiff's alleged infringement. *See SanDisk*, 480 F.3d at 1382 (defendant met with plaintiff and presented a detailed analysis of how plaintiff's products infringed defendant's patents as part of licensing

---

[8]In addition to the Business Wire article, Edmunds cites Autobytel's statement in its 2007 Form 10-K filed with the Securities & Exchange Commission that it "intend[s] to grow and advance [its] business, in part, through enforcing and strengthening [its] intellectual property rights." (D.I. 15 at ex. 2) However, as Autobytel points out, Autobytel did not file its 2007 Form 10-K until March 17, 2008, five days after Edmunds filed the instant action. (D.I. 16 at 2 n.1) This statement, then, is not helpful to Edmunds, since jurisdiction pursuant to statute depends, with exceptions not relevant here, on the facts as they exist when the complaint was filed. *See, e.g., Walton v. United States*, 80 Fed. Cl. 251, 264-265 (Fed. Cl. 2008) (discussing *GAF Bldg. Materials Corp. v. Elk Corp. of Dallas*, 90 F.3d 479 (Fed. Cir. 1996) and *Black v. Sec'y of HHS*, 93 F.3d 781 (Fed. Cir. 1996)).

5

negotiations); *Echostar*, 515 F. Supp. 2d at 449 (defendant's counsel sent a letter to plaintiffs expressing defendant's belief that plaintiffs had been practicing defendant's patent for a substantial length of time); *WS Packaging*, 2006 U.S. Dist. LEXIS 64166, at *3 (E.D. Wis. Sep. 5, 2006) (defendant's principal repeatedly stated that plaintiff's products were covered by defendant's patent and that, if plaintiff failed to renew the licensing agreement between the two parties, defendant would sue plaintiff and its customers for patent infringement); *Micron*, 518 F.3d at 898 (defendant sent three letters to plaintiff strongly suggesting that plaintiff should license defendant's technology); *Monolithic Power*, 2007 WL 2318924, at *1-3 (defendant had previously sued plaintiff for infringement involving the same patent and similar products); *Digital Packaging*, 2006 U.S. Dist. LEXIS 9815, at *3 (defendant sent a letter to plaintiff informing plaintiff of its belief that some of plaintiff's products either directly or indirectly infringed defendant's patents); *Sigma-Tau*, 36 F. Supp. 2d at 30 (in addition to sending letters to plaintiff's customers, defendant sent a letter to plaintiff stating that defendant would sue plaintiff for patent infringement if plaintiff continued to sell a certain product in Europe); *Dr. Reddy's*, 2002 WL 31059289, at *7 (defendant made statements in two Wall Street Journal articles accusing plaintiff and several other companies of manufacturing products that infringed one or more of defendant's patents).

Edmunds' characterizations notwithstanding, it seems clear in these cases that the patentees' overt acts targeting the declaratory judgment plaintiffs factored into the findings that actual controversies existed. Thus, while an overt, specific act toward the declaratory judgment plaintiff is not required to demonstrate the existence of an actual

6

controversy, none of the cases Edmunds cites supports the proposition that the absence of an overt, specific act is not a significant hurdle to a finding of jurisdiction under the Declaratory Judgment Act.

Given the foregoing, the court finds that Edmunds has failed to carry its burden regarding the existence of an actual controversy. Autobytel's suits against sales leads companies and stated general intent to enforce its rights, without more, are not sufficient to show the existence of a real controversy between Autobytel and Edmunds. None of the facts adduced by Edmunds establishes that Autobytel believes Edmunds to be infringing the '517 patent; even if never communicated to the alleged infringer, such belief is fundamental to the existence of a real controversy between the parties. Without it, the controversy exists in the mind of only one side, which makes it speculative (as opposed to real) and one-sided (as opposed to *between* the parties).

Nor does Edmunds adduce any facts to establish that an infringement suit against it was imminent. The circumstances supporting Edmunds' declaratory judgment complaint existed in late 2004. Edmunds' ability to delay this action until now cuts against its argument that its alleged controversy with Autobytel is sufficiently immediate as to require adjudication now. *See Citizen Elecs. Co. v. Osram GmbH*, 377 F. Supp. 2d 149, 157 (D.D.C. 2005) ("plaintiff's failure to take prompt action in the face of what it claims to be a real threat of an infringement suit" is relevant to question of whether plaintiff's declaratory judgment action is sufficiently immediate under *Maryland Casualty*). Accordingly, the court finds, under all the circumstances, that no actual controversy exists between the parties and that the Declaratory Judgment Act does not confer subject matter jurisdiction on the court.

7

## V. CONCLUSION

For the aforementioned reasons, the court grants Autobytel's motion to dismiss

(D.I. 11).  An appropriate order shall issue.